IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CR-246-FL

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | (UNDER SEAL)[1] |
| KENNETH MAURICE QUICK, JR., | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on defendant's oral motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, made May 8, 2026, at close of the government's evidence in defendant's ongoing jury trial. After hearing the parties in oral argument, court took the motion under advisement. For reasons set forth below, defendant's motion is DENIED.

**BACKGROUND**

Superseding indictment filed February 5, 2025, charges defendant with the following:

1. Count One: First-degree murder, in connection with the killing of Timothy Dumas, Sr. ("Dumas"), in violation of 18 U.S.C. § 1111;
2. Count Two: Discharging a firearm in furtherance of a crime of violence and in the course of same knowingly causing the death of Dumas, in violation of 18 U.S.C. §§ 924(c) and 924(j)(1);
3. Count Three: Conspiracy to distribute and possess with intent to distribute a quantity of cocaine, in violation of 21 U.S.C. §§ 846 and 841(a)(1);

---

[1] Where the court's order refers in part to targets of a murder investigation, the parties are DIRECTED to file jointly under seal, within 14 days, a copy of this order marked to reflect any perceived necessary redactions with the words "Proposed Redacted" affixed to the captioned title. Upon the court's inspection and presuming its approval, redacted copy of this order, as proposed by the parties in accordance with controlling authorities, will be made a part of the public record. If upon its review the court determines a different approach other than what is proposed may be necessary, notice will be given. If the parties jointly determine no redaction is warranted, they are DIRECTED to file jointly, within that same 14-day period, a notice to that effect. In that event, the clerk will solicit the court's approval to unseal this order before taking further action.

4. Count Four:  Discharging a firearm during and in relation to a drug trafficking crime and in the course of same knowingly causing the death of William Lavigne II ("Lavigne"), in violation of 18 U.S.C. §§ 924(c) and 92(j)(1);

5. Count Five:  Possession of ammunition by a convicted felon, in violation of 18 U.S.C. § 922(g)(1);

6. Count Six:  Attempt to alter, destroy, mutilate, and conceal an object, the body of Lavigne, with the intent to impair its integrity and availability for use in a grand jury proceeding, in violation of 18 U.S.C. § 1512(c)(1);

7. Count Seven:  Attempt to alter, destroy, mutilate, and conceal an object, a pickup truck belonging to Dumas, with the intent to impair its integrity and availability for use in a grand jury proceeding, and aiding and abetting same, in violation of 18 U.S.C. §§ 1512(c)(1) and 2; and

8. Count Eight:  Failure to notify law enforcement of the deaths of Dumas and Lavigne and secretly disposing of their bodies, in violation of 18 U.S.C. §§ 7(3) and 13(a) and N.C. Gen. Stat. § 14-401.22(a) and (e).

At arraignment May 7, 2025, defendant entered not guilty plea to all counts. Jury trial beginning May 4, 2026, is ongoing.  As noted, defendant lodged the instant oral motion for judgment of acquittal at the close of the government's evidence, whereupon the court heard oral argument on same and took the matter under advisement.

**COURT'S DISCUSSION**

A.      Standard of Review

Federal Rule of Criminal Procedure 29(a) provides that "after the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." As the court noted May 8, 2026, the bar on this motion is set high by the law.  "A defendant who challenges the sufficiency of the evidence faces a heavy burden." United States v. Small, 944 F.3d 490, 499 (4th Cir. 2019).[2]  The court's role is "limited to considering whether there is substantial evidence, taking the view most favorable to the Government, to support" the charge. United States v. Ziegler, 1 F.4th 219, 232 (4th Cir. 2021). "Substantial evidence is evidence that a reasonable

---

[2]      Internal quotation marks and citations are omitted from all case citations in this memorandum opinion unless otherwise specified.

finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." Id. "[T]his court must give full play to the jury to resolve testimonial conflicts, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts." United States v. Dennis, 19 F.4th 656, 665 (4th Cir. 2021). The "court cannot make its own credibility determinations but must assume that the jury resolved all contradictions in testimony in favor of the Government." United States v. Penniegraft, 641 F.3d 566, 572 (4th Cir. 2011).

B.      Analysis

1.      Count One

To prove first degree murder, the government must establish 1) defendant killed Dumas; 2) with malice aforethought; 3) with premeditation; and 4) the killing occurred on Fort Bragg military installation, within the special maritime or territorial jurisdiction of the United States. See 18 U.S.C. § 1111(a); United States v. Fleming, 739 F.2d 945, 947–48 (4th Cir. 1984); see also United States v. Quintero, 21 F.3d 885, 890 n.3 (9th Cir. 1994).

The government has provided substantial evidence on count one. As to the first element, on the day of the murders Lavigne attempted to sell nine ounces of cocaine to defendant for approximately $15,000.00 during a series of text messages exchanged through the "Signal" messaging application on their cellular telephones. In these messages, Lavigne explained that his supplier, who turned out to be Dumas, must accompany him to the sale. Defendant agreed to this arrangement but told Lavigne that Dumas must remain in the vehicle when they arrived at defendant's location.

Consistent with the foregoing, location records derived from a cellular telephone associated with Dumas show him traveling with Lavigne to 21240 Barnhill Circle in Laurinburg, North Carolina, a location tied to defendant and his criminal associate Shavonte McBryde ("McBryde").

3

Dumas and Lavigne then traveled a short distance to 19082 Blakely Road also located in Laurinburg, another location connected to defendant, before making their final journey to the location on Fort Bragg where they were found murdered.

As discussed below in connection with count four, the evidence indicates Lavigne was murdered at either 21240 Barnhill Circle or 19092 Blakely Road, prior to the arrival of his body on Fort Bragg. Dumas, however, was murdered at the Fort Bragg location. The location records derived from defendant's cellular telephone show him meeting Dumas and Lavigne at the Barnhill Circle location that same day, traveling with them to the Blakely Road location, and then to the remote location on Fort Bragg.

There, Dumas was found deceased with bullet wounds in his forehead and back. Deoxyribonucleic acid ("DNA") derived from defendant was found at the Fort Bragg location and under Dumas's fingernails. The evidence further indicates that defendant alone committed the Dumas murder given his DNA at the scene, the fact that Lavigne was killed prior to Dumas, and the lack of any evidence showing that an additional person was present. A rational jury could find defendant killed Dumas at Fort Bragg on the basis of the foregoing.

As to malice aforethought, the government must show defendant killed Dumas deliberately and intentionally or with callous and wanton disregard for human life. Fleming, 739 F.2d at 947–48. Relatedly, premeditation requires showing that the killing is the result of planning and deliberation. See United States v. Ball, 18 F.4th 445, 456–57 (4th Cir. 2021); see also United States v. Garcia-Meza, 403 F.3d 364, 371 (6th Cir. 2005).

> Premeditation exists when a person has a fully formed conscious purpose to kill, even for a moment. In other words, the mental state required for premeditation must exist only for such time as will allow the accused to be conscious of the nature of the act he was about to commit and the probable result of that act.

Ball, 18 F.4th at 456–57.

Trial evidence shows that defendant lured Dumas and Lavigne to Laurinburg with the promise to pay them thousands of dollars in exchange for cocaine, and then killed them instead of completing the transaction. That evidence would allow the jury to infer that defendant intended both murders as a means to obtain cocaine without paying the promised money. Such an inference is further supported by evidence that just two months after the murders defendant lured Monterrio Taylor ("Taylor") to Laurinburg with the same promise to pay thousands of dollars in exchange for ecstasy pills and marijuana, and then murdered Taylor instead of completing the transaction.

Furthermore, evidence at the Fort Bragg scene indicates that Dumas was shot twice, once in the back and once in the forehead, suggesting defendant formed the conscious choice to kill Dumas prior to the murder. Finally, defendant's participation in the subsequent efforts to destroy evidence at the scene, and, later, prevent Enos Clark ("Clark"), an accessory after the fact, from testifying, also show consciousness of guilt as to the murder and help establish both malice aforethought and premeditation. See United States v. Van Metre, 150 F.3d 339, 352 (4th Cir. 1998) ("A jury could reasonably infer from Van Metre's attempt to silence [a witness against him] that he intended to sexually assault [the victim]); United States v. Hayden, 85 F.3d 153, 159 (4th Cir. 1996).

The final element in count one is that the murder occurred within the special maritime or territorial jurisdiction of the United States. Defendant does not contest that Fort Bragg is within the special territorial jurisdiction of the United States, and thus the only question is whether defendant committed the murder on Fort Bragg. The evidence at the Fort Bragg scene shows Dumas lying on the ground with bullet wounds in his back and head. In addition, the cellular telephone records indicate Dumas's phone was being used until he arrived at Fort Bragg, thus allowing the jury to infer that he was murdered at that location. Finally, law enforcement recovered

5

empty shell casings near Dumas's body. Although the government's ballistics expert Courtney Matthews ("Matthews") could not confirm that the casings were associated with the bullets that killed Dumas, that is a reasonable inference from the evidence in light of their location near Dumas's body.

2. Count Two

To prove count two, the government must establish 1) defendant committed the crime of murder as charged in count one; 2) defendant knowingly used or carried a firearm during and in relation to the commission of that crime, or knowingly possessed a firearm in furtherance of said crime; and 3) that defendant caused Dumas's death through the use of that firearm. See 18 U.S.C. § 924(c) and (j); United States v. Bran, 776 F.3d 276, 280 (4th Cir. 2015); United States v. Foster, 507 F.3d 233, 245 (4th Cir. 2007) (similar elements when predicate crime is drug trafficking instead of a crime of violence).

The same evidence recounted above with respect to count one is sufficient to allow a rational trier of fact to find defendant guilty of count two. As to the firearm and causation elements, the autopsy report, photographs of the Fort Bragg scene, and testimony of Matthews support the government's theory that defendant used a firearm to murder Dumas.

3. Count Three

With respect to count three, the government must prove 1) that there was an agreement between two or more persons to distribute and possess with the intent to distribute a quantity of cocaine; 2) that the defendant knew of this agreement; and 3) that the defendant knowingly and voluntarily participated in or became a part of this agreement. See 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(C); United States v. Strickland, 245 F.3d 368, 384–85 (4th Cir. 2001).

Here, the government produced messages from the Signal messaging application on defendant and Lavigne's cellular telephones showing them setting up a drug transaction December 1, 2020, in which defendant promised to pay approximately $15,000.00 for nine ounces of cocaine. Special Agent Daniel Cayton with the Drug Enforcement Administration confirmed that the coded language and slang terms in these messages referred to a drug conspiracy in which Lavigne planned to sell cocaine to defendant for the amount noted. This evidence is sufficient to survive defendant's Rule 29 motion.[3]

   4.   Count Four

As to count four, the government must prove 1) defendant committed the drug trafficking crime, conspiracy to distribute and possess with the intent to distribute cocaine, as identified in count three of the indictment; 2) defendant knowingly used or carried a firearm during and in relation to the commission of that crime, or knowingly possessed a firearm in furtherance of said crime; and 3) that defendant caused Lavigne's death through the use of that firearm. See 18 U.S.C. § 924(c) and (j); United States v. Foster, 507 F.3d 233, 245 (4th Cir. 2007). With respect to its theory that defendant aided and abetted another in the course of committing the crime charged in count four, the government must show 1) that the defendant knew that the charged crime was to be committed or was being committed; 2) that the defendant knowingly did some act for the purpose of aiding or encouraging the commission of that crime; and 3) that the defendant acted with the intention of causing the crime charged to be committed. See 18 U.S.C. § 2; Rosemond v. United States, 572 U.S. 65, 68–69, 71–78 (2014).

With respect to the substantive § 924(j) charge in count four, the government produced evidence showing the conspiracy to distribute cocaine as noted above in the discussion regarding

---

[3]   The court also understood defendant's opening statement as an admission to the conduct underlying count three.

count three.  On December 1, 2020, the day of the murders, Lavigne met Dumas at the Walmart in Aberdeen, North Carolina.  Evidence suggests they travelled together in Lavigne's vehicle to the 21240 Barnhill Circle address where they met defendant.  Lavigne's cell phone records show no outgoing activity, such as outgoing text messages, after meeting defendant at this location.

Location data from cellular records also shows defendant, Lavigne, and Dumas travelling to 19082 Blakely Road together, and then to Fort Bragg where Lavigne was found deceased with five bullets wounds lodged in his body.  Defendant's DNA was found on the steering wheel of Lavigne's vehicle, supporting the inference he drove the vehicle to Fort Bragg with Lavigne's body in the back of that truck.  Clark also placed defendant near the Fort Bragg location on the day of the murders, and defendant told Clark that "they like to kill me," referring to Lavigne and Dumas, which the jury could infer as an admission that he was involved in the murders.  The evidence supporting the substantive § 924(j) charge in count four therefore is sufficient to allow a rational trier of fact to convict defendant.

Turning to the government's requested jury instruction on aiding and abetting with respect to count four, the government did not present significant evidence showing defendant aided another in using a firearm to cause Lavigne's death.  Nonetheless, Matthews's testimony that different firearms were used for the Lavigne and Dumas killings[4] suggests that more than one person was involved in Lavigne's murder.  In addition, Clark testified that McBryde instructed him to retrieve defendant from the Fort Bragg location shortly after Dumas's murder, and McBryde and Clark both assisted defendant with towing and then burning Dumas's vehicle.  And Lavigne

---

[4]     As defendant emphasized during the Rule 29 arguments, Matthews testified that she could not determine whether the cartridge casings found near Dumas held the bullets that killed Dumas.  And where Matthews determined only that the weapon that fired those cartridge casings was different than the weapon that was used in Lavigne's murder, defendant argues that the evidence is inconclusive as to whether different firearms were used in the two murders.  But these cartridge casings were found near Dumas's body, and as a result the jury reasonably can infer that the weapon from which those casings were discharged is the same weapon used to kill Dumas.

and Dumas met defendant at McBryde's brother's residence at 21240 Barnhill Circle.  Considered together, this evidence could lead a rational juror to determine that defendant aided McBryde or other persons in Lavigne's killing.

To sum up the evidence on aiding and abetting, the Signal messages, cellular telephone location data, ballistics evidence, and Clark's testimony all support the government's alternative theory that defendant assisted McBryde or other unknown persons in committing the murder of Lavigne.  And based on this same evidence, a rational juror could conclude that defendant knew the murder was to be committed, knowingly assisted in the commission of the murder, and did so with the intent that the murder be committed.  See Rosemond, 572 U.S. at 71–78 (discussing elements of aiding and abetting under 18 U.S.C. § 2).

5.      Count Five

To prove count five, the government must establish 1) that the defendant knowingly possessed ammunition; 2) that at the time the defendant possessed the ammunition, the defendant previously had been convicted of a crime punishable by imprisonment for a term exceeding one year; 3) at the time defendant possessed the ammunition, he knew that he had been convicted of such an offense; and 4) that the possessed ammunition traveled in interstate commerce. See 18 U.S.C. § 922(g)(1); United States v. Langley, 62 F.3d 602, 606 (4th Cir. 1995) as modified by Rehaif v. United States, 588 U.S. 225 (2019).

Defendant stipulated with the government that the second and third elements of count five can be proved beyond a reasonable doubt.  The evidence recounted above also easily shows defendant knowingly possessed ammunition.  For example, Clark testified that in his experience defendant typically carried a firearm.  The evidence placing defendant at the Fort Bragg scene where Dumas was killed by gunfire also strongly supports finding that he knowingly possessed

9

ammunition.  As to the interstate commerce element, special agent Joshua Johnson with the Bureau of Alcohol, Tobacco, Firearms and Explosives provided unrebutted testimony that the cartridge casings found at the Fort Bragg scene were not manufactured in North Carolina, thus establishing the travel in interstate commerce element.  See Langley, 62 F.3d at 606.

    6.    Count Six

Turning to count six, the government must establish 1) that defendant attempted to alter, destroy, mutilate, or conceal the body of Lavigne; 2) that the defendant acted knowingly and corruptly; and 3) that the defendant acted with the intent to impair the body's integrity or availability for use in an official proceeding.  See 18 U.S.C. §§ 1512(c)(1); United States v. Sterling, 860 F.3d 233, 245–46 (4th Cir. 2017).

The government presented substantial evidence to support its theory that defendant knowingly attempted to alter, destroy, mutilate, or conceal Lavigne's body.  Defendant's DNA was found on the steering wheel of Lavigne's vehicle, which itself was found in a remote location on Fort Bragg.  Lavigne's body was found wrapped in a large tarp in the bed of the abandoned truck.  The telephone records also show defendant traveling with Lavigne and Dumas to the remote location on Fort Bragg.  This evidence easily supports the inference that defendant knowingly attempted to conceal Lavigne's body.

During oral arguments on the instant motion, the government clarified that it is seeking an aiding and abetting instruction for both counts six and seven.[5]  For the same reasons discussed above in connection with count four, the court will give an aiding and abetting instruction for count six.  That is, the evidence supports the inference that defendant assisted McBryde or some unknown person(s) to murder Lavigne and then conceal his body, given that defendant met

---

[5]    As agreed during argument, the government is not required to charge an aiding and abetting theory in the indictment in order to obtain jury instruction on same.  See United States v. Wills, 346 F.3d 476, 495 (4th Cir. 2003).

10

Lavigne at McBryde's brother's residence, a different firearm was used in each killing, and Clark testified that he and McBryde assisted defendant after the murders were committed.

7. Count Seven

To prove count seven, the government must establish 1) that defendant attempted to alter, destroy, mutilate, or conceal the Dodge Ram truck belonging to Dumas; 2) that the defendant acted knowingly and corruptly; and 3) that the defendant acted with the intent to impair the vehicle's integrity or availability for use in an official proceeding. See 18 U.S.C. §§ 1512(c)(1); Sterling, 860 F.3d at 245–46.

Here, Clark testified that defendant and McBryde were involved in the attempts to conceal Dumas's vehicle. First, defendant and Clark went to the Walmart in the early morning hours of December 2 and attempted to tow the truck to avoid detection by law enforcement, which itself is sufficient evidence to show a violation of § 1512(c)(1). Second, defendant also was present later that same day when Clark returned to the Walmart, loaded the truck onto the trailer, and then left it on a roadside in a remote location outside of Laurinburg. Although it is true that McBryde was the person that directed Clark to burn the truck, this evidence is sufficient to withstand defendant's Rule 29 challenge on count seven.

8. Count Eight

Finally, to prove count eight, the government must establish 1) that defendant failed to notify a law enforcement authority of the deaths of Lavigne or Dumas, or secretly disposed of their bodies; 2) that defendant did so with the intent to conceal the death of that person; 3) that the defendant knew or had reason to know that the body or human remains were of a person who did not die of natural causes; and 4) that the offense occurred within the special maritime and territorial

11

jurisdiction of the United States.  <u>See</u> 18 U.S.C. §§ 7(3), 13(a); N.C. Gen. Stat. § 14-401.22(a), (e).

Here, the evidence recounted above shows that defendant knew both Lavigne and Dumas were deceased and that they did not die of natural causes when he attempted to conceal their bodies on Fort Bragg, a location within the special territorial jurisdiction of the United States.  And defendant both secretly disposed of their bodies and failed to notify law enforcement of the deaths. Accordingly, the government provided substantial evidence with respect to count eight, and this count also will proceed to jury determination.

**CONCLUSION**

Based on the foregoing, defendant's oral motion for judgment of acquittal is DENIED.

SO ORDERED, this the 10th day of May, 2026.


_____
LOUISE W. FLANAGAN
United States District Judge

12